No. 25-13485

PETER PARNELL, JUSTIN
RICHARDSON, B G, by and through her
parent Raymond Guillory,

*Plaintiffs-
Appellants*,

E D B by and through her parent Whitney
Morgan Donovan, et al.,

*Plaintiffs,*

v.

SCHOOL BOARD OF LAKE COUNTY,
FLORIDA, et al.,

*Defendants,*

SCHOOL BOARD OF ESCAMBIA
COUNTY, FLORIDA

*Defendant-
Appellee.*

On Appeal from the U.S. District Court for the
Northern District of Florida (Case No. 4:23-cv-414)

**BRIEF OF READ FREELY ALABAMA AS *AMICUS CURIAE* IN
SUPPORT OF APPELLANTS AND REVERSAL**

Robin F. Thurston
Kalli A. Joslin*
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
rthurston@democracyforward.org
*Counsel for Proposed* Amicus Curiae

*\*Pro Hac Vice motion to be filed contemporaneously*

i

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-1 through 26.1-3 and 29-2, counsel for proposed *amicus curiae* hereby certifies that, upon information and belief, the following persons and entities, in addition to those listed as parties and counsel in all briefs submitted to this Court and the court below, have or may have an interest in the outcome of this appeal:

1. Joslin, Kalli (counsel for *amicus curiae*)

2. EveryLibrary (fiscal sponsor of *amicus curiae*)

3. Read Freely Alabama (*amicus curiae*)

4. Thurston, Robin (counsel for *amicus curiae*)

Pursuant to FED. R. APP. P. 26.1 and 29(a)(4)(A) and Eleventh Circuit Rules 26.1-1 and 29.2, the amicus curiae listed below represents that it does not have parent corporations or publicly held companies holding 10% or more of any stock.

1. Read Freely Alabama

*/s/ Robin F. Thurston*

Counsel of Record for *Amicus Curiae*

ii

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES.......................................................................... iv

INTEREST OF AMICUS CURIAE ........................................................... 1

STATEMENT OF THE ISSUE................................................................. 1

SUMMARY OF THE ARGUMENT.......................................................... 2

ARGUMENT............................................................................................. 3

  I.   The First Amendment necessarily protects the right to receive information and ideas. ................................................................... 3

 II.  Libraries are the "quintessential locus" of the right to receive information and ideas. ................................................................... 8

CONCLUSION ...................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177
(11th Cir. 2009) .................................................................. 16

*Armstrong v. D.C. Pub. Libr.*, 154 F.Supp.2d 67 (D.D.C. 2001) ....... 15, 16

*Board of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
457 U.S. 853 (1982) ............................................................ 10

*Brown v. Ent. Merch. Ass'n*, 564 U.S. 786 (2011) ............................. 6

*Brown v. Louisiana*, 383 U.S. 131 (1966) .................................... 10

*Buehrle v. City of Key W.*, 813 F.3d 973 (11th Cir. 2015) ................. 9

*Cornelius v. NAACP Legal Def. and Educ. Fund*, Inc., 473 U.S.
788 (1985) ........................................................................ 18

*Crookshanks v. Elizabeth Sch. Dist.*, 775 F. Supp. 3d 1160 (D.
Colo. 2025) ....................................................................... 12

*E.K. by and through Keeley v. Dep't of Def. Educ. Activity*, No.
1:25-CV-637 (PTG/IDD), 2025 WL 2969560 (E.D. Va. Oct. 20,
2025) .............................................................................. 13

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) ................... 7, 17

*Ginsberg v. New York*, 390 U.S. 629 (1968) ................................... 7

*Griswold v. Connecticut*, 381 U.S. 479 (1965) ............................. 6, 9

*Kingsley Int'l Pictures Corp. v. Regents of Univ. of State of N.Y.*,
360 U.S. 684 (1959) .............................................................. 5

*Kleindienst v. Mandel*, 408 U.S. 753 (1972) ................................. 8, 15

*Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242
(3d Cir. 1992) ................................................................... 15

*Lamont v. Postmaster Gen.*, 381 U.S. 301 (1965) ............................. 6

*Mahmoud v. Taylor*, 606 U.S. 522 (2025) ..................................... 14

*Martin v. City of Struthers*, 319 U.S. 141 (1943) ....................... 3, 4, 9

*Miller v. California*, 413 U.S. 15 (1973) ..................................................... 7

*Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577 (6th Cir. 1976) ........................................................................................... 11

*Murthy v. Missouri*, 603 U.S. 43 (2024) ..................................................... 3

*Neinast v. Bd. of Trs. of Columbus Metro. Libr.*, 346 F.3d 585 (6th Cir. 2003) ............................................................................................ 15

*Parnell v. Sch. Bd. of Escambia Cnty.*, No. 4:23-cv-414-AW-MAF, 2025 WL 2957001 (N.D. Fla. Sep. 30, 2025) ............................. 10

*PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F.Supp.3d 1325 (N.D. Fla. 2024) ............................................................. 14, 16

*Penguin Random House LLC v. Gibson*, 796 F. Supp. 3d 1052 (M.D. Fla. 2025) ................................................................................. 12

*Penguin Random House LLC v. Robbins*, 774 F. Supp. 3d 1001 (S.D. Iowa 2025) .................................................................................. 17

*Police Dep't of Chi. v. Mosley*, 408 U.S. 92 (1972). .................................. 3

*Red Lion Broad. Co. v. FCC*, 395 U.S. 367 (1969) ................................... 6

*Right to Read Def. Comm. of Chelsea v. Sch. Comm.*, 454 F. Supp. 703 (D. Mass. 1978) ........................................................................ 11

*Roe v. Rutherford Cnty. Bd. of Educ.*, No. 3:25-cv-00429, 2025 WL 3205703 (M.D. Tenn. Nov. 17, 2025) ................................. 13

*Schneider v. New Jersey*, 308 U.S. 147 (1939) ...................................... 4, 8

*Searcey v. Harris*, 888 F.2d 1314 (11th Cir. 1989) ................................. 18

*Stanley v. Georgia*, 394 U.S. 557 (1969) ................................................... 5

*Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530 (N.D. Tex. 2000) .......................................................................................... 12, 17

*Thomas v. Collins*, 323 U.S. 516 (1945) ................................................... 4

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) ........ 8

*United States v. Alvarez*, 567 U.S. 709 (2012) ......................................... 7

*W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ........................ 4, 5, 9

## Other Authorities

*Am. Libr. Ass'n, Collection Maint. and Weeding,*
   https://perma.cc/EXB3-PXEK ............................................................ 12

# INTEREST OF AMICUS CURIAE[1]

Read Freely Alabama is a grassroots, volunteer-run membership organization comprising concerned citizens who oppose censorship in Alabama libraries. Read Freely Alabama's purpose and mission is to uphold the values of American democracy by fighting any censorship in Alabama's public libraries, and by advocating for inclusive library collections that accurately reflect the diversity of the communities served by those libraries. Because Read Freely Alabama has an interest in protecting library patrons' First Amendment rights, it writes here to provide this Court with additional background on the constitutional right to receive information and ideas.

## STATEMENT OF THE ISSUE

Amicus writes solely to address the issue of whether the First Amendment right to receive information and ideas may be implicated by

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund this brief, and no person other than amicus curiae, its members, and its counsel contributed money to fund this brief. All parties have consented to the filing of this brief.

1

library book removals, should the Court find it appropriate to reach that issue.

## SUMMARY OF THE ARGUMENT

For the reasons set forth in the opening brief, this Court need not (and should not) reach the question of whether there is a right to receive information and ideas under the First Amendment. No. 25-13485, Opening Br. Dkt. No. 26, at 20. To the extent this Court does reach that question, however, it should confirm the continued vitality of that right and reject the district court's conclusion that library book decisions do not implicate that right. The right to receive information is clearly established in decades of Supreme Court precedent. Many courts have routinely acknowledged the right to receive information and ideas in challenges to public and school library policies and decisions. Even policies banning allegedly obscene content from school libraries have been found to be unconstitutional where they make no consideration of an individual work's context or merit. Simply put, there is no "public library exception" to the right to receive information and ideas.

# ARGUMENT

## I. The First Amendment necessarily protects the right to receive information and ideas.

A public body "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972). The Supreme Court has accordingly on multiple occasions recognized that the First Amendment's protections for freedom of speech and the press encompass a "right to receive information and ideas," including as recently as last year. *Murthy v. Missouri*, 603 U.S. 43, 75 (2024) (internal quotations omitted). The Court's precedents make clear that this right is not limited to uncontroversial topics, to adults, or to situations in which it is convenient for the government to accommodate.

*Martin v. City of Struthers*, 319 U.S. 141 (1943), is often cited as the Court's first recognition of the right to receive information, though nods to the right appear even earlier in the U.S. Reports. *See, e.g., Schneider v. New Jersey*, 308 U.S. 147, 163 (1939) (acknowledging "the free communication of information and opinion secured by the Constitution"). As the Court in *Martin* explained, "[t]he authors of the First Amendment

knew that novel and unconventional ideas might disturb the complacent," but the Founding Fathers nonetheless penned the First Amendment broadly enough to encompass both "the right to distribute literature" and "the right to receive it." 319 U.S. at 143; *cf. Thomas v. Collins*, 323 U.S. 516, 537 (1945) ("[H]istory has not been without periods when the search for knowledge alone was banned. Of this we may assume the men who wrote the Bill of Rights were aware.").

The same year as *Martin*, the Court issued its famous pronouncement that "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Striking down a requirement that students salute the American flag amidst fraught global conflict, *Barnette* emphasized that "freedom to differ is not limited to things that do not matter much," for "[t]hat would be a mere shadow of freedom." *Id.* The Court later underscored that "the right to receive information and ideas" "is not confined to the expression of ideas that are conventional or shared by a majority." *Stanley v. Georgia*, 394 U.S. 557, 566 (1969) (quoting *Kingsley Int'l Pictures Corp. v. Regents of Univ. of*

*State of N.Y.*, 360 U.S. 684, 688-89 (1959)). "This right to receive information and ideas, *regardless of their social worth*, is fundamental to our free society." *Id.* at 564 (citation omitted and emphasis added).

"It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail, rather than to countenance monopolization of that market, whether it be by the Government itself or a private [party]." *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 390 (1969). And "[i]t would be a barren marketplace of ideas that had only sellers and no buyers." *Lamont v. Postmaster Gen.*, 381 U.S. 301, 308 (1965) (Brennan, J., concurring). Fundamentally, "the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge." *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965).

To be clear, the right to receive information and ideas belongs to children and adults alike. "No doubt a State possesses legitimate power to protect children from harm, but that does not include a free-floating power to restrict the ideas to which children may be exposed." *Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 794 (2011) (citations omitted). The First Amendment exempts only narrow categories of speech (such as

incitement, fraud, and true threats) from its protection. *United States v. Alvarez*, 567 U.S. 709, 717 (2012). While obscenity is one such category of exempted speech, *id.*, and is measured differently as applied to minors (*see Ginsberg v. New York*, 390 U.S. 629, 638 (1968)), governments cannot simply declare all depictions of a particular subject matter obscene without undertaking an individualized analysis of a piece's "literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24 (1973); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213 (1975) ("Clearly all nudity cannot be deemed obscene even as to minors."). "Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." *Erznoznik* at 213-14. *Cf. Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969) ("[S]tudents may not be regarded as closed-circuit recipients of only that which the State chooses to communicate.").

The right to receive information does not crumble under the weight of administrative difficulty in its application. While policies that do not infringe upon this right may be "less efficient and convenient than bestowal of power on police authorities to decide what information may

be disseminated . . . the answer is that considerations of this sort do not empower a municipality to abridge freedom of speech." *Schneider*, 308 U.S. at 164. Similarly, "[w]hile alternative means of access" to information and ideas can be a "relevant factor" in the First Amendment analysis, the Court has rejected the suggestion "that existence of other alternatives extinguishes altogether any constitutional interest . . . in [a] particular form of access." *Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972).

For its part, this Court has recognized that "[t]he First Amendment protects the artist who paints a piece just as surely as it protects the gallery owner who displays it, the buyer who purchases it, and the people who view it." *Buehrle v. City of Key W.*, 813 F.3d 973, 977 (11th Cir. 2015) (citing *Griswold*, 381 U.S. at 482 ("The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, [and] the right to read.")).

In *Barnette*, the Supreme Court dismissed the "fear that freedom to be intellectually and spiritually diverse or even contrary will disintegrate the social organization." 319 U.S. at 641. Thus, "stringent prohibition can

serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas." *Martin*, 319 U.S. at 147.

## II. Libraries are the "quintessential locus" of the right to receive information and ideas.

Public libraries, "dedicated to quiet, to knowledge, and to beauty," logically reside at the very heart of this right. *Brown v. Louisiana*, 383 U.S. 131, 142 (1966). It is unsurprising, then, that many cases acknowledging this right have come in the context of challenges to content and behavior regulations at public and school libraries. These cases make clear that the district court below erred in concluding that "a public library's removal of books does not implicate the First Amendment right to receive information." *Parnell v. Sch. Bd. of Escambia Cnty.*, No. 4:23-cv-414-AW-MAF, 2025 WL 2957001 (N.D. Fla. Sep. 30, 2025).

Well before the Supreme Court's fractured decision in *Board of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982) (discussing the right to receive information in the school library context), courts around the country grappled with the First Amendment implications of library book removals. Analyzing a school board's decision to remove Joseph Heller's *Catch 22* and Kurt Vonnegut's *Cat's Cradle*

from a high school library, the Sixth Circuit began with the understanding that "where a speaker exists, . . . the [First Amendment] protection afforded is to the communication, to its source and to its recipients both." *Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 583 (6th Cir. 1976). That court concluded that neither the state nor the school board "could place conditions on the use of the library which were related solely to the social or political tastes of school board members." *Id.* at 582; *see also Right to Read Def. Comm. of Chelsea v. Sch. Comm.*, 454 F. Supp. 703, 714 (D. Mass. 1978) ("What is at stake here is the right to read and be exposed to controversial thoughts and language—a valuable right subject to First Amendment protection.").

This Circuit has not squarely addressed the right to receive information and ideas in the school library context. But following *Pico*, other courts addressing as-applied challenges to book removals have routinely recognized the existence of a right to receive information in the library setting, even while acknowledging *Pico's* splintered nature. *See, e.g., Penguin Random House LLC v. Gibson*, 796 F. Supp. 3d 1052, 1073 (M.D. Fla. 2025), *appeal pending*, No. 25-13181 (11th Cir. filed Sept. 12, 2025) ("[T]he First Amendment analysis revolves around the rights of

those authors to have their books reach their intended audiences and of students to receive the information set forth in those books.") (internal quotations omitted); *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547 (N.D. Tex. 2000) ("The right to receive information is vigorously enforced in the context of a public library."); *Crookshanks v. Elizabeth Sch. Dist.*, 775 F. Supp. 3d 1160, 1175 (D. Colo. 2025) ("The First Amendment of the U.S. Constitution . . . protect[s] the right to receive information and ideas. . . . This protection is heightened in public schools."); *E.K. by and through Keeley v. Dep't of Def. Educ. Activity*, No. 1:25-CV-637 (PTG/IDD), 2025 WL 2969560, at *15 (E.D. Va. Oct. 20, 2025) ("[T]he First Amendment bars schools from removing books to prescribe what shall be orthodox or because of the impermissibility of the underlying ideas.") (internal quotations omitted); *Roe v. Rutherford Cnty. Bd. of Educ.*, No. 3:25-cv-00429, 2025 WL 3205703, at *9 (M.D. Tenn. Nov. 17, 2025) ("[T]he Sixth Circuit [has] recognized a particular First Amendment right of public school students to receive information which they and their teachers desire them to have.") (internal quotations omitted); *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F.Supp.3d 1325, 1331 (N.D. Fla. 2024) ("[T]he common theme in all of the potentially

relevant standards . . . is that school officials cannot remove books solely because they disagree with the views expressed in the books.").[2]

While it is true that books removed from school libraries may still be available for purchase elsewhere, in reality many library patrons cannot afford to buy new books, just as many public school students cannot afford to pay private school tuition. *Cf. Mahmoud v. Taylor*, 606 U.S. 522, 562 (2025) ("It is both insulting and legally unsound to tell parents that they must abstain from public education in order to raise their children in their religious faiths, when alternatives can be prohibitively expensive."). The right to receive information and ideas simply cannot hinge upon the specter of "alternative means of access." *Kleindienst*, 408 U.S. at 765.

Several courts have also analyzed the right to receive information in the context of policies limiting physical access to public libraries (such as dress codes and loitering bans), concluding that "this right . . . includes

---

[2] A consolidated interlocutory appeal is pending before this Court in this case solely on a discovery dispute relating to legislative privilege; the merits of this decision are not on appeal. *PEN Am. Ctr, Inc. v. Escambia Cnty Sch. Bd.*, Nos. 25-13298, 25-13698 (11th Cir. filed Sept. 23, 2025 and Oct. 22, 2025).

the right to some level of access to a public library, the quintessential locus of the receipt of information." *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992)*; see also Armstrong v. D.C. Pub. Libr.*, 154 F.Supp.2d 67 (D.D.C. 2001); *Neinast v. Bd. of Trs. of Columbus Metro. Libr.*, 346 F.3d 585 (6th Cir. 2003). The district court in *Armstrong* held that a library's open-ended dress-code policy "place[d] patrons' First Amendment rights in realistic danger" and "threaten[ed] to compromise access to information and ideas" by "creat[ing] an effectively standard-less test whose daily application is governed only by subjective determination." 154 F.Supp.2d at 79 (internal quotations omitted).

Librarians regularly curate and revise their collections based on practical, neutral considerations such as demand, budget, and physical conditions. *See Am. Libr. Ass'n, Collection Maint. and Weeding*, https://perma.cc/EXB3-PXEK. In the case of nonfiction books, librarians may prioritize factual accuracy, and school libraries may consider pedagogical appropriateness without offending the Constitution. *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1227 (11th Cir. 2009); *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F.Supp.3d at

1331. That said, even policies banning allegedly obscene content from school libraries have been found to be unconstitutional when they "make[] no attempt" to evaluate a book's "literary, political, artistic, or scientific value" before requiring the book's removal. *Penguin Random House LLC v. Robbins*, 774 F. Supp. 3d 1001, 1025 (S.D. Iowa 2025) (enjoining a state law requiring the removal of school library books that contain a "description" of a "sex act"); *see also Erznoznik*, 422 U.S. at 213 (finding a censorship policy unconstitutional because it "sweepingly forbids display of all films containing any uncovered buttocks or breasts, *irrespective of context* or pervasiveness") (emphasis added).

Ultimately, "[t]here simply is no interest, *let alone a compelling one*, in restricting access to non-obscene, fully-protected library books solely on the basis of the majority's disagreement with their perceived message." *Sund*, 121 F. Supp. 2d at 552 (emphasis in original). Though there may be close questions in this area, courts are well equipped to make difficult legal and factual determinations in the First Amendment context. *See, e.g.*, *Searcey v. Harris*, 888 F.2d 1314, 1324-25 (11th Cir. 1989) (concluding based on the record that a "facially reasonable justification" for a school policy was "'in reality a facade for

viewpoint-based discrimination'") (quoting *Cornelius v. NAACP Legal Def. and Educ. Fund*, Inc., 473 U.S. 788, 811 (1985)). To simply dodge the question by finding a categorical "public library exception" to the right to receive information is an abdication of courts' duty to separate constitutional wheat from chaff. This Court should not make the same error.

## CONCLUSION

For the reasons stated above, should the Court reach the question of whether the First Amendment provides a right to receive information and ideas, it should affirm that it does, including in the library context. The decision below should be reversed.

Respectfully submitted,

*/s/ Robin F. Thurston*
Robin F. Thurston
Kalli A. Joslin*
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
rthurston@democracyforward.org

Counsel for Proposed *Amicus Curiae*

*Pro Hac Vice motion to be filed contemporaneously*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, this document contains 2,732 words according to the word count function of Microsoft Word 365.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

*/s/ Robin F. Thurston*

Counsel of Record for *Amicus Curiae*

**CERTIFICATE OF SERVICE**

I certify that on December 24, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

_/s/ Robin F. Thurston_

Counsel of Record for _Amicus Curiae_